UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JASON R. BORELLI,

                Petitioner,

        v.                                        Case No. 09-C-1018

WILLIAM POLLARD,

                Respondent.

## DECISION AND ORDER DENYING PETITION
## FOR A WRIT OF HABEAS CORPUS

### I. PROCEDURAL HISTORY

On October 28, 2009, Jason R. Borelli ("Borelli"), a person incarcerated pursuant to a state court judgment, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) On August 6, 2010, Chief Judge Charles N. Clevert, Jr. screened Borelli's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition within 60 days. (Docket No. 8.) Thereafter, the case was reassigned to this court for all further proceedings upon the consent of the parties to the exercise of full jurisdiction of a magistrate judge. (Docket Nos. 10, 13, 15.)

Following the respondent answering the petition, (Docket No. 18), Borelli filed a "Motion for Voluntary Dismissal Without Prejudice," (Docket No. 19). In this motion, Borelli stated he "would like to exercise his right to request a dismissal without prejudice, so that he can properly exhaust any and all still available State remedies; specifically a 974.06 Motion." (Docket No. 19.)

The court denied this motion noting that even if this court granted the dismissal without prejudice, certain procedural bars might prevent him ever returning to federal court with his claims

for relief. (Docket No. 20.) Therefore, the court permitted Borelli the opportunity to decide how he wished to proceed with this case. (Docket No. 20.) On November 26, 2010, Borelli submitted a reply wherein he states he "has decided to only argue the Issues that were conceded by the State." (Docket No. 21 at 1.) The court understands Borelli to be stating that he intends to proceed only with the claims for which the respondent has acknowledges Borelli has exhausted his state court remedies.

Therefore, in accordance with this court's prior order, (Docket No. 20), the court shall consider only Borelli's claims that (1) his Sixth Amendment and due process rights were violated when the trial court refused to grant a mistrial after two jurors were physically affected by gruesome evidence; (2) that his trial counsel was ineffective for failing to object to the medical examiner's Power Point presentation; and (3) that his trial counsel was ineffective for failing to voir dire the jury after the medical examiner's presentation. (Docket No. 18, ¶4.) Notably, these are the only claims Borelli addressed in his reply. The other claims Borelli raised in his petition, i.e. that the admission of the victim's 911 call offended the Sixth Amendment and due process, his trial counsel was unreasonable for seeking a lesser-included offense, and his sentence was impermissibly harsh and excessive, are considered withdrawn.

## II. FACTS

When the doorbell to Brandi Johnson's ("Johnson") Superior, Wisconsin apartment rang shortly before 5:00 A.M. on the morning of January 7, 2006, she and her male friend ignored it. When shortly afterwards they heard tiptoeing in the hall outside Johnson's apartment and then heard Leah Gustafson's ("Gustafson") neighboring apartment door open and close they thought the sounds they heard coming from Gustafson's apartment were the sounds of a romantic rendezvous. But soon they realized something was terribly wrong. In response to Gustafson's repeated frantic calls for help and the sounds of a violent struggle occurring within the apartment, Johnson and her

friend pounded on Gustafson's door. Getting no response, the pair returned to Johnson's apartment where Johnson called 911.

Inside Gustafson's apartment, Gustafson was stabbed repeatedly, twice with a steak knife and also with a collectible Samurai sword Gustafson kept in her apartment. Two of the stab wounds from the sword were so deep that they penetrated Gustafson's entire abdomen. Gustafson was also strangled and struck in the head with a glass vase, a statue, and a heavy ashtray, pieces of which were recovered from her hair. Gustafson managed to call 911 on her cell phone, but she was not able to communicate with the dispatcher. However, the line was left open for approximately two minutes and the sounds of the brutal attack and Gustafson's pleas were recorded by the emergency dispatcher.

Minutes later, when Johnson heard someone running from Gustafson's apartment, Johnson went to a window to see if she could see the individual. From her second floor window Johnson saw a man run from the residence and across the street towards the building in which she knew Borelli lived. Johnson's friend went to Gustafson's apartment across the hall, where he found Gustafson's apartment in a shambles and Gustafson unresponsive. Gustafson was pronounced dead at the scene.

Arriving officers followed a trail of blood to Borelli's residence. Inside the residence they found Borelli in a bathroom, having just showered. Borelli, clad only in blood stained shorts, was taken into custody and observed to have numerous fresh scratches over his body. Other blood stained clothing and a blood stained towel were recovered from the residence. Subsequent analysis determined that the blood on these items was that of Gustafson, and that Borelli's fingerprints were on the sword used in the murder.

Further investigation revealed that Borelli had spent the time before the murder drinking and had ingested marijuana and cocaine. Borelli was acquainted with Johnson and as a result had met her neighbor Gustafson on a couple of occasions at Johnson's apartment. Although Borelli had

previously expressed romantic interest in Gustafson, as he did with many women, Johnson quickly dashed Borelli's hopes by telling him he was not Gustafson's type. Having met briefly only twice, Gustafson and Borelli were not friends.

Borelli was charged with First Degree Intentional Homicide and pled not guilty by reason of mental disease or defect. In a bifurcated trial, the jury convicted him of murder and found that he was not suffering from a mental disease or defect at the time of the crime. Borelli was sentenced to life in prison without the possibility of parole.

Borelli sought post-conviction relief in the circuit court, which was denied on June 25, 2008. (Docket No. 18-2 at 67.) Borelli's conviction was affirmed on April 28, 2009 by the court of appeals (Docket No. 18-5), and on July 16, 2009, the Wisconsin Supreme Court denied Borelli's petition for review, (Docket No. 18-8.) Therefore, Borelli's conviction became final on October 14, 2009 when the ninety-day deadline for seeking review by the United States Supreme Court passed without Borelli filing a petition for a writ of certiorari. See Sup. Ct. R. 13; Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2002). Borelli filed his petition only two weeks later, and therefore his petition is clearly timely. See 28 U.S.C. § 2244(d)(1)(A).

**III. STANDARDS OF REVIEW**

> Under the Antiterrorism and Effective Death Penalty Act (AEDPA), [a federal court] may grant a petition for habeas relief from a state court judgment only in one of two limited circumstances: if the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Smith v. Grams, 565 F.3d 1037, 1043 (7th Cir. 2009).

The court shall presume that the state court's factual determinations are correct, and the petitioner may rebut this presumption only be clear and convincing evidence. Id. (citing § 2254(e)(1)). The petitioner "bears the burden of showing that the state court's finding of fact or its

4

application of federal law was not only erroneous, but unreasonable." Id. (citing Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009); Sturgeon v. Chandler, 552 F.3d 604, 609 (7th Cir. 2009)). Under the "unreasonable application" prong of (d)(1), it is not enough for the federal court to simply disagree with the conclusion of the state court; the state court's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

IV. ANALYSIS

### A. Failure to Grant a Mistrial

While testifying at trial, the medical examiner utilized a Power Point presentation that included numerous graphic photos of the autopsy of the victim. Although the photos did not depict any portion of the internal examination, photos of Gustafson's numerous wounds were presented to the jury. Soon after the medical examiner's presentation began, a juror began to feel ill. After a break where counsel and the juror met with the court in chambers, without objection from either party, the court excused the juror. (Docket No. 18-13 at 61-62.) The trial began with a panel of 14 jurors and after excusing one juror, one alternate juror remained on the panel.

Later in the medical examiner's testimony, another juror asked for a break. (Docket No. 18-13 at 77.) At this point Borelli requested a mistrial, contending that the first juror was obviously affected by the graphic photos and that this second juror was presumably similarly affected. (Docket No. 18-13 at 78.) Borelli's attorney noted that the juror was looking away from the Power Point presentation. (Docket No. 18-13 at 78.) The court denied Borelli's request, stating that the juror indicated she needed a break because she felt the courtroom was too hot and therefore, after the courtroom was cooled down she felt better and wished to continue. (Docket No. 18-13 at 78-79.)

The court of appeals rejected Borelli's argument that a mistrial was required, stating:

The trial court took appropriate steps to address the concerns of both jurors who exhibited problems during the trial testimony. Both were provided a recess; one was

5

> excused. The second juror wished to proceed, and the court adjusted the temperature in the courtroom and moved her away from the monitor. None of the twelve other jurors complained of any difficulties, and any claim they were biased is pure speculation.

(Docket No. 18-5, ¶15.)

> The due process clause of the Fourteenth Amendment entitles a state criminal defendant to an impartial jury, Morgan v. Illinois, 504 U.S. 719, 726 (1992), which is to say a jury that determines guilt on the basis of the judge's instructions and the evidence introduced at trial, as distinct from preconceptions or other extraneous sources of decision. Patton v. Yount, 467 U.S. 1025, 1037 n. 12 (1984); Irvin v. Dowd, 366 U.S. 717, 721-23 (1961); United States v. McClinton, 135 F.3d 1178, 1185-86 (7th Cir. 1998); United States v. Angiulo, 897 F.2d 1169, 1182-83 (1st Cir. 1990). In addition -- and this is critical -- the clause requires the trial judge, if he becomes aware of a possible source of bias, to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial." Remmer v. United States, 347 U.S. 227, 230 (1954); see also United States v. Thomas, 463 F.2d 1061, 1063-64 (7th Cir. 1972); United States v. Humphrey, 208 F.3d 1190, 1198-99 (10th Cir. 2000); United States v. Davis, 177 F.3d 552, 556-57 (6th Cir. 1999); Howard v. Moore, 131 F.3d 399, 422 (4th Cir. 1997) (en banc).

Oswald v. Bertrand, 374 F.3d 475, 477-478 (7th Cir. 2004). Thus, the question for this court is whether the incidents involving two jurors would have made a judge "aware of a possible source of bias" thus triggering the court's obligation to inquire further.

Borelli's argument, as the court understands it, is that the graphic photographs potentially prejudiced the jury against a finding of not guilty by mental disease or defect. Rather than following the law regarding insanity, Borelli contends that the gruesome photos may have motivated the jurors to ensure that the person responsible for the brutal conduct was punished rather than afforded treatment.

The fact that two jurors complained during the medical examiner's Power Point presentation does not raise a reasonable inference that the other two, or any of the other jurors were prejudiced by the presentation. In fact, the record fails to even establish the two jurors at the center of this matter were already affected by the photographs. It is entirely speculative to conclude that the photographs were the source of the jurors' complaints. The record merely states that the first juror

6

felt ill and was therefore excused. (Docket No. 18-13 at 61-62.) The second juror stated she needed a break because the courtroom was too hot and when questioned as to whether she wished to continue, she stated she did. (Docket No. 18-13-78-79.) The only thing that is remotely suspicious is the timing.

Even if the court were to accept Borelli's speculation that these two jurors reacted to the graphic photographs in the medical examiner's Power Point presentation, the court would nonetheless conclude that Borelli has failed to demonstrate possible bias with the jury panel. Unlike the traditional juror bias argument where a defendant contends that the jury's decision was based upon some factor other than the evidence presented at trial, in this case, Borelli contends that it was evidence admitted without objection that resulted in bias. The fact that the evidence was admitted without objection does not preclude a finding of bias but it certainly does make it far more difficult for the petitioner to demonstrate that a court failed to *sua sponte* inquire about the possibility of bias. There is nothing surprising about a lay juror being affected upon learning the details of a crime, particularly a violent homicide. Jurors are people with emotions and feelings. But being emotionally or physically affected by the evidence is not the same as being prejudiced. Only if there was reason to suspect that there was a risk that the jury would have decided the case based upon some factor other than the evidence presented and the instructions given by the court was the court required to inquire. Borelli has failed to demonstrate that such a risk existed.

These incidents, either individually or together, do not suggest a reasonable possibility that the jury was biased. Therefore, the court had no obligation to voir dire the entire panel. Accordingly, this court is unable to conclude that the court of appeals' decision denying Borelli relief as to this claim was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.

**B. Ineffective Assistance of Counsel**

A petitioner seeking relief pursuant to 28 U.S.C. § 2254 due to an alleged denial of the effective assistance of counsel must demonstrate that the state court's decision on this issue was contrary to or involved an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Wright v. Van Patten, 128 S. Ct. 743 (2008) (per curiam). Under Strickland, a petitioner is entitled to relief only if he can prove the following two elements. Goodman v. Bertrand, 467 F.3d 1022, 1027 (7th Cir. 2006). First, the petitioner must prove that his counsel's performance was unreasonable. In assessing the reasonableness of counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Raygoza v. Hulick, 474 F.3d 958, 962 (7th Cir. 2007) (quoting Strickland, 466 U.S. at 689). A court assessing the reasonableness of an attorney's performance must be cautious not to view counsel with the distorted perspective offered by hindsight; rather, every effort must be made to evaluate an attorney's performance from the perspective of counsel at the time. Strickland, 466 U.S. at 689. An attorney's actions do not become unreasonable simply because they proved unsuccessful. Id.

Second, the petitioner must prove that this unreasonable conduct prejudiced his defense. It is not enough for petitioner to show that the attorney's error had "some conceivable effect on the outcome." Raygoza, 474 F.3d at 962-63 (quoting Strickland, 466 U.S. at 693). But on the opposite side, it is not necessary for the petitioner to demonstrate that the error more likely than not altered the outcome of the case. Id. Rather, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694).

Borelli contends that his trial counsel was ineffective for failing to object to the medical examiner's Power Point presentation and for failing to voir dire the entire jury following that presentation.

The court of appeals rejected Borelli's argument with respect to counsel's failure to object to the Power Point presentation, noting:

> In order to succeed on a claim that counsel should have brought a particular motion, the defendant must demonstrate the motion was likely to succeed At the postconviction hearing, the trial court conducted a Wis. Stat. § 904.03 analysis, balancing the probative value of the photographs against the danger of unfair prejudice. The court applied the proper legal standard, explained its rationale, and ultimately concluded the photos were admissible and it would not have excluded them even if Borelli's counsel had requested. We therefore agree with the trial court that counsel's performance was not deficient, especially when counsel got the State to agree not to use some photos of Gustafson's head injuries.

(Docket No. 18-5, ¶17 (citation omitted).)

Although presented to the court through the lens of ineffective assistance of counsel, because Borelli's attorney was ineffective only if the evidence was improperly admitted, Borelli's claim presents essentially an evidentiary question. "Generally, . . . the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." Gross v. Greer, 773 F.2d 116, 119 (7th Cir. 1985) (quoting United States ex rel. Harris v. Illinois, 457 F.2d 191, 198 (7th Cir. 1972)). Thus, evidentiary questions are generally outside the scope of a federal court's review when faced with a petition for a writ of habeas corpus under § 2254.

Following Borelli's post-conviction motion, the trial court determined that although graphic, the probative value of photographs in the Power Point presentation outweighed any potential prejudice. Thus, the court concluded that had a motion to exclude the photographs been brought, it would have been denied. Because the motion to exclude would have been denied had it been brought, it was not unreasonable or prejudicial for Borelli's attorney to fail to object.

9

The court also finds no basis to conclude that the admission of the autopsy photographs was fundamentally unfair. Simply because a photograph depicting a victim of a violent homicide will be disturbing to some viewers, this does not bar the admission of such evidence. To the contrary, such photographs are a routine and often essential part of a homicide prosecution. See, e.g., Wong v. Belmontes, 130 S. Ct. 383, 390 (2009) ("The jury saw autopsy photographs showing Steacy McConnell's mangled head, her skull crushed by 15 to 20 blows from a steel dumbbell bar."); United States v. Allen, 247 F.3d 741, 793 (8th Cir. 2001), judgment vacated on other grounds, 536 U.S. 953 ("[T]he autopsy photographs had substantial probative value because they showed the entry angles of the bullets, the locations of each wound, and the extent of the injuries caused by the hollow point bullets.") Based upon the descriptions of the photographs contained in the record (the actual photographs are not included), it is apparent that the photographs were no more graphic than what was necessary to adequately communicate the medical examiner's expert conclusions. Thus, the court is unable to conclude that the admission of the evidence was fundamentally unfair.

Finally, the court finds no basis to conclude that it was unreasonable for Borelli's trial attorney to fail to request to voir dire the jury following the incidents regarding jurors discussed above. On this issue, the court reaches the same conclusion as did the court of appeals: "there was no indication any of the remaining jurors were adversely affected by the photos. Thus, there was no reason to voir dire the entire jury, and it was not objectively unreasonable for counsel to fail to request it." (Docket No. 18-5, ¶18.) Therefore, the court must deny Borelli's claim for relief.

## V. CONCLUSION

This court is unable to conclude that the court of appeals' decision affirming Borelli's conviction was contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. There is nothing in the record to suggest that the trial court erred in failing to question the entire jury about the possibility of

prejudice after the medical examiner's presentation, which included autopsy photographs of the victim. Similarly, there is no basis to conclude that a mistrial was required after two jurors reported discomfort during the medical examiner's testimony. Because the probative value of the medical examiner's Power Point presentation outweighed any risk of unfair prejudice, and thus would have been admitted had an objection been made, Borelli's attorney was not unreasonable for not objecting to the presentation of this evidence. Finally, because there was no reason to believe that the entire jury panel had been prejudiced by the medical examiner's testimony, it was not unreasonable for Borelli's attorney to not request to voir dire the entire panel after the medical examiner's testimony. Accordingly, Borelli's petition shall be denied.

Further, in accordance with Rule 11 of the Rules Governing Section 2254 Cases, the court concludes that Borelli has failed to make a substantial showing of the denial of a constitutional right, see 28 U.S.C. § 2253(c)(2), and therefore denies Borelli a certificate of appealability.

**IT IS THEREFORE ORDERED** that Borelli's petition for a writ of habeas corpus is denied. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is **denied**.

Dated at Milwaukee, Wisconsin this 27th day of December, 2010.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge
